**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMEKA POWELL,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCING OPPORTUNITIES, *et al.*,<br><br>Defendants. | Civil Action No. 22-00525 (GC) (DEA)<br><br>**MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

    **THIS MATTER** comes before the Court upon Defendant Advancing Opportunities, Inc.'s Motion for Partial Dismissal (ECF No. 28) of Plaintiff's First Amended Complaint (ECF No. 25),[1] dated December 14, 2022, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff opposed (ECF No. 30), and Defendant replied (ECF No. 31). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED**. Plaintiff's claims, other than the claim of retaliation in violation of the Family Medical Leave Act, are dismissed without prejudice. In light of Plaintiff's *pro se* status, Plaintiff shall be given thirty (30) days to file a further amended complaint to try to cure the defects identified herein.

---

[1] The complaint is styled "Amended Verified Complaint," but the Court refers to it as the First Amended Complaint to avoid confusion with the earlier Amended Complaint.

I.   **BACKGROUND**

A. **Procedural Background**

This case involves allegations that Defendant Advancing Opportunities discriminated and retaliated against Plaintiff Tameka Powell, who is proceeding *pro se*, when it discharged her after she took leave to recover from medical complications associated with the COVID-19 virus.[2]

On February 2, 2022, Advancing Opportunities removed this matter to federal court from the Law Division of the Superior Court of New Jersey, Monmouth County. (ECF No. 1.[3]) A week later, Advancing Opportunities moved to partially dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted as well as to compel her pursuant to Rule 12(e) to provide a more definite statement as to her Family Medical Leave Act ("FMLA") claim, 29 U.S.C. § 2601, *et seq.* (ECF No. 4.) Before a decision was issued by the Court, Powell moved to amend her Complaint on April 7, 2022. (ECF No. 10.)

On June 17, 2022, the Court granted Plaintiff's motion to amend, instructing her to "file an all-inclusive amended complaint by no later than July 1, 2022." (ECF No. 12.) The Court administratively terminated Defendant's pending motion to dismiss, noting that it could be renewed following the amended complaint. (*Id.*)

After obtaining an extension, Plaintiff filed her Amended Complaint on July 21, 2022. (ECF No. 17.) On August 11, 2022, Advancing Opportunities once again moved to partially dismiss for failure to state a claim as well as to compel Plaintiff to provide a more definite statement of her FMLA claim. (ECF No. 18.)

---

[2]   The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

[3]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

On November 16, 2022, the Court granted Advancing Opportunities' motion in part and denied it in part.[4] (ECF Nos. 22 & 23.) Specifically, the Court dismissed without prejudice Plaintiff's claims for wrongful termination, misrepresentation, and violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; the New Jersey Family Leave Act ("NJFLA"), N.J. Stat. Ann. § 34:11B-1, *et seq.*; and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (*Id.*) The Court denied the motion for a more definite statement, finding that Plaintiff had sufficiently alleged that her employment was terminated in retaliation for her decision to take FMLA leave. (ECF No. 22 at 13-14.) The Court provided Plaintiff thirty days to file a further amended complaint. (*Id.* at 14.)

On December 14, 2022, Plaintiff filed her First Amended Complaint ("FAC"). (ECF No. 25.) The FAC names four Defendants – Advancing Opportunities, Paul Ronollo, R.S., and Vanessa Ortiz[5] – and asserts five causes of action: Count I, violation of the FMLA and NJFLA; Count II, violation of the ADA; Count III, violation of Title VII; Count IV, violation of Plaintiff's common law rights and public policy; and Count V, wrongful termination. (*Id.* ¶¶ 28-32.)

On December 27, 2022, Advancing Opportunities moved to partially dismiss the FAC pursuant to Rule 12(b)(6). (ECF No. 28.) Powell opposed on January 3, 2023, and Advancing Opportunities replied on January 27, 2023. (ECF Nos. 30 & 31.)

---

[4]     The Court's opinion can also be found at *Powell v. Advancing Opportunities*, Civ. No. 22-00525, 2022 WL 16961387 (D.N.J. Nov. 16, 2022).

[5]     There is no evidence on the docket that Ronollo, R.S., or Ortiz were ever served. The FAC also indicates that R.S. passed away from COVID-19 in March 2020. (ECF No. 25 ¶ 9.)

B.  **Factual Background**[6]

Powell was hired by Advancing Opportunities in October 2015, and promoted to the position of manager in 2018.[7] (ECF No. 25 ¶¶ 6-7.) On or about March 12, 2020, early in New Jersey's COVID-19 pandemic, Advancing Opportunities admitted a new patient, R.S., to its facility even though the patient did not supply "paperwork stating that he was free and clear from all communicable disease" in the seven days prior to his admission. (*Id.* ¶ 8.) R.S. was later diagnosed with COVID-19 and passed away as a result. (*Id.* ¶ 9.)

On or about March 20, 2020, Powell tested positive for COVID-19, and she was subsequently hospitalized for shortness of breath at Hackensack Meridian Health's Jersey Shore University Medical Center in Neptune, New Jersey. (*Id.* ¶¶ 10-11.) Powell remained in the hospital for approximately twelve days. (*Id.* ¶ 12.)

After being released, Powell continued to have "a hard time breathing," and her primary care physician ordered Powell "a pump to help with her breathing." (*Id.* ¶¶ 13-14.) On or about April 27, 2020, a pulmonary care doctor ordered Powell an "oxygen (breathing) machine" because Powell's "oxygen levels were still low." (*Id.* ¶ 15.) Due to the seriousness of Powell's medical complications, her primary care doctor recommended that Powell be kept out of work until August 3, 2020. (*Id.* ¶ 16.)

Advancing Opportunities first approved medical leave for Powell from March 23, 2020, until May 4, 2020, which was extended until June 8, 2020. (*Id.* ¶ 17.) When Powell's medical

---

[6] The factual background is taken from Plaintiff's FAC. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

[7] As the Court previously noted, Advancing Opportunities appears to be a Section 501(c)(3) non-profit organization that provides services and support to persons with disabilities and their families so they can live independently. (ECF No. 22 at 2 n.2.)

leave under the FMLA was set to expire on June 12, 2020, Advancing Opportunities granted her thirty days of personal leave from June 15, 2020, until July 15, 2020. (*Id.* ¶ 18.) Despite Powell's doctor recommending that she remain out of work through at least early August 2020, Advancing Opportunities sent Powell an email on or about July 7, 2020, informing her that she would be discharged if unable to return to work. (*Id.* ¶¶ 19-20.)

Advancing Opportunities then terminated Powell's employment when she was unable to return to work without restrictions. (*Id.* ¶¶ 20 & 23.) Powell complains that Advancing Opportunities did not allow her to work from home and ignored the organization's own policy that required a doctor to approve return. (*Id.* ¶¶ 22-23.) This was purportedly in contrast to other male employees that were allowed to either work from home or take extended leaves. (*Id.* ¶¶ 22 & 26.) Powell alleges that her COVID-19 complications left her "disabled mentally and physically," which included limiting her ability to perform daily tasks and to complete her job duties. (*Id.* ¶ 21.) Powell further alleges that Advancing Opportunities discharged her for exercising her rights under the FMLA and NJFLA. (*Id.* ¶ 24.)

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal

conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

The Court is mindful that *pro se* pleadings are to be liberally construed. *See Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (citing *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019)). "Notwithstanding the rule of liberal construction, a *pro se* complaint may not survive dismissal if its factual allegations do not meet *Iqbal*'s basic plausibility standard." *Id.* (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)); *see also Kennedy v. Am. Airlines Inc.*, 195 F. Supp. 3d 646, 653 (D.N.J. 2016) (Simandle, C.J.) ("Despite this liberality, however, a *pro se* complaint must *still* 'contain sufficient factual matter, accepted as true,' to 'state a [plausible] claim to relief.'" (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

### III.  DISCUSSION

#### A.  Count I – Violation of the FMLA and NJFLA

Plaintiff alleges that Advancing Opportunities unlawfully interfered with her rights under the FMLA and NJFLA and then retaliated against her when she was discharged in July 2020. (ECF No. 25 ¶ 28.) Advancing Opportunities does not move to dismiss Plaintiff's FMLA retaliation claim,[8] but maintains that Plaintiff has not cured the defects that the Court previously identified with Plaintiff's asserted FMLA unlawful interference and NJFLA claims. (ECF No. 28-1 at 11-

---

[8]  The Court found that Plaintiff's Amended Complaint had "sufficiently allege[d]" a *prima facie* case of FMLA retaliation. (ECF No. 22 at 14.)

12.) The Court agrees with Defendant.

### 1. *FMLA Interference Claim*

In its prior opinion, the Court found that Plaintiff could not maintain a cause of action for interference under the FMLA because she did "not claim that she was denied FMLA leave." (ECF No. 22 at 13.) The Court noted that an interference claim "is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA," and because Plaintiff alleged that she was granted the twelve weeks of leave due under the FMLA, an interference claim could not be plausibly pled. (*Id.* (quoting *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).)

Plaintiff continues to allege in the FAC that she was granted twelve weeks of FMLA leave by Advancing Opportunities, from mid-March through mid-June 2020, in addition to an extra thirty days of personal leave until mid-July 2020. (ECF No. 25 ¶¶ 17-18.) No argument is made by Plaintiff in opposition to the motion to dismiss that an FMLA interference claim can be maintained under these factual circumstances. Because Plaintiff's own allegations establish that she exhausted her twelve weeks of FMLA leave, the interference claim is dismissed without prejudice. *See* 29 U.S.C. § 2612(a)(1) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . ."); *Licwinko v. Celgene Corp.*, Civ. No. 20-00255, 2020 WL 3819191, at *4 (D.N.J. July 8, 2020) ("Plaintiff has not pled facts sufficient to raise an FMLA interference claim, because the Complaint does not allege that [Defendant] in any way prevented Plaintiff from taking the full length of FMLA leave that she requested."); *see also Banner v. Fletcher*, 834 F. App'x 766, 769-70 (3d Cir. 2020) ("The record demonstrates that [plaintiff] had exhausted her 12 workweeks of FMLA leave for herself by the time she sought additional FMLA leave in December 2012 . . . . Because the record shows that [plaintiff] had exhausted her leave . . . , [defendant] is entitled to summary judgment on [the interference]

claim."); *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 122 (D.N.J. 2020) ("Defendant cannot be found to interfere with Plaintiff's attempts to use time he did not have.").

### 2. *NJFLA Claims*

The Court also found that, under the NJFLA, a plaintiff's own health condition is not an eligible reason for leave and, "[a]ccordingly, because Plaintiff . . . failed to allege she was terminated despite being eligible for leave under the NJFLA, she ha[d] not stated a claim under the NJFLA." (ECF No. 22 at 11 (citing *McConnell v. State Farm Mut. Ins. Co.*, 61 F. Supp. 2d 356, 360 (D.N.J. 1999)).)

In response, Plaintiff now cites to legislation that was enacted by the New Jersey Legislature in March 2020, S.B. 2304, which, among other things, "expand[ed] the State's Temporary Disability Insurance . . . and Family Leave Insurance . . . programs to provide more workers with access to paid leave benefits during the public health emergences," including by "expand[ing] the law's definition of a 'serious health condition.'" (ECF No. 30 at 3.) Defendant argues that what Plaintiff references "is inapposite" because it "discuss[es] Temporary Disability Insurance and Family Leave Insurance, not the NJFLA." (ECF No. 31 at 3-4.)

Plaintiff is correct to point out that the NJFLA was amended twice during the pandemic to expand eligible reasons for family leave. *See* L. 2020, c. 17 § 2, eff. March 25, 2020; L. 2020, c. 23 § 1, eff. April 14, 2020. These reasons now include:

> i. "Family leave" means leave from employment so that the employee may provide care made necessary by reason of:
>
> (1) the birth of a child of the employee, including a child born pursuant to a valid written agreement between the employee and a gestational carrier;
>
> (2) the placement of a child into foster care with the employee or in connection with adoption of such child by the employee;

>> (3) the serious health condition of a family member of the employee; or
>
> (4) in the event of a state of emergency declared by the Governor, or when indicated to be needed by the Commissioner of Health or other public health authority, an epidemic of a communicable disease, a known or suspected exposure to the communicable disease, or efforts to prevent spread of a communicable disease, which:
>
>> (a) requires in-home care or treatment of a child due to the closure of the school or place of care of the child of the employee, by order of a public official due to the epidemic or other public health emergency;
>>
>> (b) prompts the issuance by a public health authority of a determination, including by mandatory quarantine, requiring or imposing responsive or prophylactic measures as a result of illness caused by an epidemic of a communicable disease or known or suspected exposure to the communicable disease because the presence in the community of a family member in need of care by the employee, would jeopardize the health of others; or
>>
>> (c) results in the recommendation of a health care provider or public health authority, that a family member in need of care by the employee voluntarily undergo self-quarantine as a result of suspected exposure to a communicable disease because the presence in the community of that family member in need of care by the employee, would jeopardize the health of others.
>
> [N.J. Stat. Ann. § 34:11B-3(i).]

While the NJFLA has been expanded to cover, under the conditions stated in 34:11B-3(i)(4), an employee's need to care for a child due to the closure of a school by order of a public official, a family member who would jeopardize the health of others, or a family member who must self-quarantine during a pandemic, the statute still does not cover an employee's *own* health conditions. *Id.* Therefore, the precedent that holds that a plaintiff, like Powell, cannot maintain a claim under the NJFLA for leave requested for their own injuries and disabilities remains controlling. *See, e.g., Grant v. UMDNJ-UCHC-Rutgers Univ.*, Civ. No. 16-5164, 2018 WL

994897, at *5 n.8 (D.N.J. Feb. 21, 2018) ("Plaintiff's NJFLA claim cannot be based on leave he allegedly requested for his own medical condition, such as his diabetes."); *Turner v. New Jersey State Police*, Civ. No. 08-5163, 2017 WL 1190917, at *26 (D.N.J. Mar. 29, 2017) ("[Plaintiff] took leave time only in connection with his own medical needs, and therefore cannot seek relief under the NJFLA."); *see also Bell v. KA Indus. Servs., LLC*, 567 F. Supp. 2d 701, 709 (D.N.J. 2008) ("[T]he FLA only applies to employees who take leave to care for a family member, not employees on leave for their own injuries.").

Because Plaintiff has not shown that her alleged request for leave was covered by the NJFLA, the Court once again finds that she has not stated a claim under the statute. The Court dismisses Plaintiff's NJFLA claims without prejudice.

### B. Counts II and III – Violations of the ADA and Title VII

Plaintiff alleges that Advancing Opportunities failed to accommodate her COVID-19-related disabilities and, through her discharge, discriminated against her in violation of the Americans with Disabilities Act. (ECF No. 25 ¶ 25.) Plaintiff also alleges that Advancing Opportunities discriminated against her in violation of Title VII "due to . . . gender," presumably because Defendant allowed male employees to work from home but not Powell. (*Id.* ¶¶ 26 & 30.)

Both the ADA and Title VII require plaintiffs to file charges of discrimination and to exhaust administrative remedies before bringing suit in court, which includes obtaining a right-to-sue letter from the United States Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA); *Simko v. United States Steel Corp*, 992 F.3d 198, 206-07 (3d Cir. 2021) ("[T]he ADA requires that a plaintiff administratively exhaust all claims before seeking relief in federal court. . . . These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are 'essential parts of the statutory plan, designed to correct discrimination through administrative conciliation

and persuasion if possible, rather than by formal court action.'" (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976))); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue.").

The Court's prior opinion dismissing Plaintiff's ADA and Title VII claims explained that both statutes, "[a]s a threshold matter, . . . require a plaintiff bringing an action against an employer for discrimination to first file an action with the EEOC" and then "receive a 'right to sue' letter before filing with the district court." (ECF No. 22 at 9-10 (collecting cases).)  The Court found that Plaintiff's Amended Complaint "contain[ed] no allegations that Plaintiff exhausted her administrative remedies, nor d[id] Plaintiff provide any such representations in opposition to Advancing Opportunities' motion to dismiss." (*Id.* at 11.)

In the FAC, Plaintiff does not allege that she filed a charge with the EEOC (or any state agency) or attempted to exhaust her administrative remedies before bringing suit. (*See generally* ECF No. 25.)  Instead, in her opposition to the motion to dismiss the FAC, Plaintiff writes that she "was unable to file any claims with the EEOC or any other State agency due to th[e] Covid 19 health emergency crisis where these facilities were either not in operation or unable to be contacted." (ECF No. 30 at 4.)  She asks the Court to "take note of the circumstances presented by this Covid 19 Virus epidemic to allow these claims to proceed on that basis." (*Id.* at 5.)

Other federal courts to consider similar allegations have found that the EEOC remained operational during the COVID-19 pandemic and "that the EEOC developed a procedure for handling discrimination charges during the pandemic, as employees were directed to file charges through a public portal and intake appointments were completed by telephone." *Coleman v. New York City Dep't of Health & Mental Hygiene*, Civ. No. 20-10503, 2022 WL 704304, at *3 (S.D.N.Y. Mar. 9, 2022). Indeed, in a press release on the EEOC's website from March 30, 2020

11

(four months before Plaintiff was discharged), the agency wrote that it was continuing to operate remotely, and it emphasized that "[p]reserving access to file a charge of discrimination is important because the laws the EEOC enforces have deadlines," and the EEOC included directions in the release as to how employees could "begin the process of filing a charge of discrimination." *See* U.S. Equal Employment Opportunity Commission, *EEOC Continues to Serve the Public During COVID-19 Crisis*, https://www.eeoc.gov/newsroom/eeoc-continues-serve-public-during-covid-19-crisis-0 (last visited July 26, 2023).

To the extent Plaintiff seeks to have this Court credit her claim that she was precluded from timely filing a charge of discrimination for reasons outside her control and to consider the application of equitable tolling (or some other doctrine of law) to excuse her failure to procure a right-to-sue letter, Plaintiff must offer more than vague allegations that the EEOC was inaccessible during the pandemic. Plaintiff must provide specific allegations demonstrating that she acted diligently to comply with the ADA's and Title VII's pre-suit requirements, and notwithstanding her diligent efforts, there were extraordinary circumstances outside her control that explain her inability to comply. In the absence of such a specific reason, generalized allegations of difficulties associated with the pandemic do not suffice. *See, e.g., Nuritdinov v. Meda-Care Transp., Inc.*, Civ. No. 22-443, 2023 WL 4571241, at *6 (S.D. Ohio July 18, 2023) ("[T]he Court finds that plaintiff's vague allegation that the EEOC office was generally inaccessible during the Covid-19 pandemic is insufficiently detailed to support the application of equitable tolling."); *Grebla v. Danbury Hosp.*, Civ. No. 22-13, 2023 WL 4279097, at *3 (D. Conn. June 29, 2023) ("As the Court previously observed, Plaintiff offers no allegations as to her own diligence in pursuing her claims; does not indicate how the pandemic hampered any such unidentified efforts; and does not provide any basis to conclude that she tried but could not timely file her complaint of discrimination . . . . These allegations do not demonstrate that she was 'prevented in some extraordinary way from

12

exercising h[er] rights.'" (quoting *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003))); *Clemente v. Allstate Ins. Co.*, Civ. No. 22-00056, 2022 WL 17976324, at *13 (W.D. Pa. Dec. 28, 2022) ("The mere existence of the COVID-19 pandemic is insufficient justification for equitable tolling; otherwise, the . . . limitations period would be meaningless after March 2020 when the pandemic began because every plaintiff would be able to avail themselves of equitable tolling."); *Verne v. New York City Dep't of Educ.*, Civ. No. 21-5427, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022) ("[P]assing reference to the pandemic, without establishing any specific reasons why she was prevented from exercising her rights in a timely manner . . . [does] not me[e]t [the] burden of establishing that the Court should apply the doctrine of equitable tolling.").

Accordingly, the Court dismisses Counts II (ADA) and III (Title VII) of the FAC without prejudice.

### C. Counts IV and V – Wrongful Termination

Although pled as two separate counts (Counts IV and V), Plaintiff appears to assert a single claim that Advancing Opportunities wrongfully terminated her employment in violation of New Jersey's common law and public policy. (ECF No. 25 ¶¶ 31-32.) Plaintiff alleges that Advancing Opportunities violated public policy by "not accomodat[ing]" her "disabilities" and "retaliat[ing] against [her] for exercising her rights." (*Id.* ¶ 32.)

As the Court has noted, employment in New Jersey is presumptively at-will and is "terminable by either employer or employee 'unless an agreement exists that provides otherwise.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994)). Therefore, an employee may be terminated "for good reason, bad reason, or no reason at all." *Id.* Nevertheless, the employment-at-will doctrine has several exceptions. For example, both the United States Congress and New Jersey Legislature

have enacted legislation prohibiting an employer from discharging an employee in a protected class for a discriminatory reason. *See, e.g.*, *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) ("[T]he ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes." (quoting *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995))). Similarly, under New Jersey's common law, an employer may not discharge an employee if the "discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980); *see id.* ("[U]nless an employee at will identifies a specific expression of public policy, he [or she] may be discharged with or without cause.").

When the Court initially dismissed Plaintiff's wrongful discharge claim without prejudice, it found that, "even based on a liberal reading of the Amended Complaint, Plaintiff does not allege any public policy – let alone one which is clearly mandated – that Advancing Opportunities purportedly violated." (ECF No. 22 at 8.) The Court emphasized that "[a] plaintiff raising a wrongful termination claim . . . bears a 'heavy burden' in proving that her termination violated such a clear mandate." (*Id.* at 7-8 (quoting *Pietrylo v. Hillstone Rest. Grp.*, Civ. No. 06-5754, 2008 WL 6085437, at *5 (D.N.J. July 25, 2008)).)

In the FAC, Plaintiff again does not identify a clearly mandated public policy that was violated. Instead, in her opposition to the motion to dismiss, Plaintiff argues that "[a] clear mandate under public policy can . . . be perceived or an inference made from the fact that Governor Phil Murphy [and the New Jersey Legislature] expanded the [NJFLA]" during the pandemic. (ECF No. 30 at 8.) The problem with Plaintiff's argument is that even if this Court were to interpret the recent amendments to the NJFLA as embodying a clear mandate of public policy,[9] those

---

[9] The *Pierce* Court provided a non-exhaustive list of public policy mandates, including legislation. *See* 417 A.2d at 512; *see also D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305,

14

amendments (as discussed above) did not expand the scope of the statute to cover individuals, like Plaintiff, who sought leave for their own health conditions. And, as has been recognized by other courts, a wrongful termination claim does not typically lie as a result of public policy embodied in a statute if the plaintiff is not covered by the statute. *See Bell v. KA Indus. Servs., LLC*, 567 F. Supp. 2d 701, 709 (D.N.J. 2008) (finding that the plaintiff could not maintain a wrongful termination claim premised on public policy in NJFLA where "he [t]ook leave to recuperate from his own injuries"); *Hampton v. Armand Corp.*, 834 A.2d 1077, 1082 (N.J. Super. Ct. App. Div. 2003) ("The State Legislature has not expressed a public policy that protects an employee, no matter how long employed, from being discharged for taking medical leave for his or her own illness."). Accordingly, Plaintiff's wrongful termination claim based on the public policy embodied in the NJFLA is dismissed without prejudice.

The Court notes, however, that New Jersey's Appellate Division has held that the FMLA's policy of protecting employees who are discharged in retaliation for taking time off for medical reasons may serve as a clear mandate of public policy for purposes of a common law wrongful termination claim pursuant to *Pierce*. *See Hampton*, 834 A.2d at 1081 ("The FMLA establishes a clear mandate of public policy for 'eligible employees' wrongfully terminated pursuant to its provisions."); *see also Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 149 (3d Cir. 2004) ("If the record would support a finding that [plaintiff] was discharged because he took FMLA leave, this might be a viable theory [for a wrongful termination claim], although it is not clear to us that a *Pierce* claim in that event would be of any additional benefit to him.").

---

312 (N.J. 1993) ("Federal law and policy can constitute New Jersey's clear mandate of public policy."). "[T]he existence of a clear mandate of public policy is an issue of law." *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1012 (N.J. 1998).

As a result, if Plaintiff were to assert in a further amended complaint a wrongful termination claim premised on the public policy embodied in the FMLA (similar to her FMLA retaliation claim), she may be able to maintain such a common law claim under *Pierce*. That said, even if a *Pierce* wrongful termination claim were thus properly pled, there may be a question as to whether the wrongful termination claim and FMLA retaliation claim could proceed simultaneously as the two claims may be duplicative.

In the context of New Jersey Law Against Discrimination ("NJLAD") claims, there seems to be a consensus that a wrongful termination claim based on the same policy as the statutory claim is preempted by the statute. *See Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 73 (3d Cir. 1996) ("Because the sources of public policy [plaintiff] relies on are coterminous with his statutory claims, he cannot advance a separate common law public policy claim."); *Rodriguez v. Springhill Suites by Marriott*, Civ. No. 13-6841, 2014 WL 575529, at *2 (D.N.J. Feb. 10, 2014) ("To the extent Plaintiff may allege that the NJLAD supplies the clear mandate of public policy, a common law claim for wrongful discharge cannot be predicated on the policy expressed through the NJLAD in light of the statutory remedy available."); *Campbell v. Sedgwick, Detert, Moran & Arnold*, Civ. No. 11-642, 2011 WL 5248150, at *3 (D.N.J. Nov. 2, 2011) ("[W]here a plaintiff bases his or her common law *Pierce* claim on the public policy of the NJLAD and asserts a claim under both, the former claim is subsumed by the latter.").

In contrast, the Court has not yet identified clear precedent as to whether a statutory retaliation claim under the FMLA and a *Pierce* wrongful termination claim premised on the same public policy can be maintained simultaneously. In *Gibbs v. Massey*, for example, the district court denied the plaintiff leave to amend the complaint to plead a wrongful termination claim concurrently with statutory claims under the FMLA, NJFLA, and NJLAD because the statutory remedies were found coterminous with the common law remedies. Civ. No. 07-3604, 2009 WL

838138, at *6 (D.N.J. Mar. 26, 2009) ("Here, the plaintiff has pleaded violations of both federal and state family leave acts as well as the LAD. The statutory remedies, where sufficiently pled, are [coterminous]. The motion [to add a wrongful discharge in violation of public policy] claim is denied."). But in *Capilli v. Whitesell Const. Co.*, a panel of the United States Court of Appeals for the Third Circuit noted that the plaintiff argued that "because a violation of the FMLA can establish a cause of action under *Pierce,* and because the FMLA and *Pierce* provide for different remedies, the two sources of relief are not coterminous, and she may seek relief under both." 271 F. App'x 261, 268 (3d Cir. 2008). Ultimately, the panel did not reach the merits of the argument because it found that the plaintiff did not have a viable FMLA claim and, "[t]herefore, her claim under *Pierce* must fail" as well. *Id.*

Because the question is not now presented, this Court will not reach the merits of whether a plaintiff can simultaneously seek relief under the FMLA and *Pierce* based on the same public policy for the same or similar alleged violations, but it highlights the issue for the parties in the event Plaintiff further amends her complaint to assert a wrongful termination claim premised on the public policy that comprises her FMLA retaliation claim.

### D. Misrepresentation

Plaintiff does not assert a separate count of misrepresentation in the FAC. (*See generally* ECF No. 25.) Instead, in the last paragraph on "damages," Plaintiff makes passing reference to alleged "misrepresentations to plaintiff." (*Id.* ¶ 33.) Then, in opposition to the motion to dismiss, Plaintiff briefly argues in support of a misrepresentation claim. (ECF No. 30 at 3-4.)

The Court is cognizant of and committed to its duty to construe *pro se* pleadings liberally, but it does not find that the mere mention of "misrepresentations" in the final paragraph of the FAC without a tie to specific factual allegations constitutes "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Absent a reasonable

indication in the FAC of Plaintiff's intent to plead a misrepresentation claim, the Court will refrain from rewriting the pleadings to include the claim simply because of three words in the final paragraph on damages. *See Freeman v. Allentown Sch. Dist.*, Civ. No. 19-4336, 2019 WL 4805224, at *2 (E.D. Pa. Oct. 1, 2019) ("The Court should not attempt to rewrite the pleadings to include claims that were never presented . . . ."); *see also United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012) ("While a court must construe a pro se litigant's pleadings liberally, it need not act as [her] advocate." (citations omitted)). In any event, because Plaintiff is being granted an opportunity to amend, if she wants to assert a separate claim for misrepresentation, she should do so clearly and plead specific factual allegations in support thereof.

## IV.     CONCLUSION

For the reasons set forth above, and other good cause shown, Defendant's Motion for Partial Dismissal (ECF No. 28) of the FAC is **GRANTED**. Specifically, as to Count I (FMLA and NJFLA), Plaintiff's FMLA interference claim and her NJFLA claims are dismissed without prejudice. Plaintiff's FMLA retaliation claim remains properly pled. As to Counts II (ADA) and III (Title VII), both claims are dismissed without prejudice. As to Counts IV and V, for wrongful termination, the claim that Advancing Opportunities wrongfully discharged Plaintiff in violation of the public policy embodied in the NJFLA is dismissed without prejudice. Plaintiff shall have thirty (30) days within which to file a further amended complaint to the extent Plaintiff can cure the defects set forth herein. An appropriate Order follows.

Dated:  July 31, 2023

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE